UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DAWN SILVA | : | |
| | : | |
| v. | : | C.A. No. 07-335A |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on September 4, 2007 seeking to reverse the decision of the Commissioner. On February 28, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 6). On March 20, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 7).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 7) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 6) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on January 21, 2005, alleging disability as of June 15, 2003. (Tr. 43-45). The application was denied initially (Tr. 30-32) and on reconsideration. (Tr. 35-37). Plaintiff filed a request for an administrative hearing on December 5, 2005. (Tr. 38). On February 14, 2007, a hearing was held before Administrative Law Judge Barry H. Best (the "ALJ") at which Plaintiff, represented by counsel, and a vocational expert appeared and testified. (Tr. 293-326).

On March 21, 2007, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 13-22). Plaintiff appealed to the Appeals Council by filing a request for review. (Tr. 9). The Appeals Council denied Plaintiff's request for review on June 29, 2007. (Tr. 5-7). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of her primary care physician, Dr. Ahmad Al-Raqqad and her treating rheumatologist, Dr. Yousaf Ali. Plaintiff also argues that the ALJ failed to properly evaluate her subjective complaints and allegations of pain and depression.

The Commissioner disputes Plaintiff's claims and asserts that there is substantial evidence in the record that supports the ALJ's determination.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's

decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at

1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a

claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human

Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do

not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this

burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical

impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

**V. APPLICATION AND ANALYSIS**

Plaintiff was thirty-nine years old at the time of the ALJ hearing (Tr. 297), has a high school education and completed hairdressing school in 1989. (Tr. 61-62). Plaintiff has previous work experience as a hairdresser. (Tr. 52-54, 57). Plaintiff alleged disability due to sarcoidosis, arthritis, disc problems and panic attacks (Tr. 56) and additionally, depression and fibromyalgia. (Tr. 64).

On January 7, 2004, Plaintiff began medical care with Dr. Ahmad Al-Raqqad as her primary care physician. (Tr. 134). Plaintiff was seen at the Rhode Island Hospital on February 25, 2004. (Tr. 79). She was admitted with a diagnosis of mediastinal adenopathy. Id. She underwent cervical mediastinoscopy for the purpose of a tissue diagnosis. Id. On February 27, 2004, Dr. Al-Raqqad reported that the results of the tissue diagnosis most likely indicated sarcoidosis. (Tr. 169).

At Dr. Al-Raqqad's referral, Plaintiff saw Dr. Charles Sherman. (Tr. 210). His physical examination, dated March 23, 2004, showed that Plaintiff was breathing comfortably. Id. He relayed that the tissue analysis confirmed the diagnosis of sarcoidosis. Id. At a May 24, 2004 visit with Dr. Sherman, Plaintiff presented complaints of chest tightness and nasal congestion. (Tr. 212).

Dr. Sherman found that Plaintiff was breathing comfortably. Id. His assessment was sarcoidosis, in stable condition. Id.

Plaintiff continued to see Dr. Al-Raqqad throughout 2004. She presented complaints of generalized weakness and fatigue. At these visits, Dr. Al-Raqqad noted that Plaintiff was negative for swelling or edema at her extremities. (Tr. 175, 179, 183).

Plaintiff began treatment with Dr. Yousaf Ali, a Rheumatologist, on December 28, 2004. She reported symptoms of hand swelling, back and neck pain. (Tr. 90). Dr. Ali noted eczema over Plaintiff's hands. (Tr. 91). Plaintiff was unable to make a fist with her right hand, but had normal range of motion of the wrist, elbow, shoulders, hips, knees and ankles. Id. Dr. Ali also observed eleven of eighteen fibromyalgia trigger points. Id. His impression was probable sarcoid-related arthritis with secondary fibromyalgia. Id. Dr. Ali next saw Plaintiff on January 10, 2005. He commented that she looked well. (Tr. 94). Plaintiff had multiple areas of myofascial tenderness. Id. There was marked palmar eczema on Plaintiff's hands. Id. She had slight difficulty making a right-hand fist. Id. The impression was probable sarcoid-related arthritis. Id.

Plaintiff saw Dr. A1-Raqqad on January 10, 2005. She reported that she had right hand swelling and an inability to use her fingers. (Tr. 190). Her visits to Dr. Al-Raqqad throughout January and February 2005 reflect complaints of generalized body and hand pain. (Tr. 191-195).

On February 18, 2005, Dr. Youssef Georgy, a state agency physician, provided an assessment of Plaintiff's functional abilities. Ex. 4F. He estimated that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently. She retained the ability to stand, walk or sit for six hours in an eight-hour workday. (Tr. 96). Dr. Georgy found that Plaintiff was limited in

handling. (Tr. 98). He also felt that Plaintiff should avoid concentrated exposure to extreme cold, workplace hazards, and fumes, odors or gasses. (Tr. 99).

Sol Pittenger, Psy.D., saw Plaintiff on March 11, 2005, for a consultative psychological examination. Ex. 6F. Plaintiff described a pattern of depression and panic attacks. (Tr. 112). She also related symptoms of decreased energy and reduced concentration. Id. Dr. Pittenger found that Plaintiff had organized and goal-directed thought process. (Tr. 114). While her immediate recall was good, Plaintiff displayed decreased concentration. Id.

Michael Slavitt, Ph.D., a State Agency Psychologist, reviewed Plaintiff's medical files and issued a mental functional assessment on March 17, 2005. Ex. 7F. He found that Plaintiff had mild restrictions of daily living. (Tr. 125). She had moderate difficulties in maintaining social functioning and maintaining pace, persistence and concentration. Id. Dr. Slavitt held that Plaintiff was not significantly limited in her ability to remember and carry out short and simple instructions. (Tr. 129). He specified that Plaintiff could perform simple three-step instructions and novel two-step instructions. (Tr. 131). He also opined that she could perform simple work of no more than three consistent steps for two-hour periods throughout an eight-hour workday. Id. Plaintiff could also sustain superficial on-the-job relations and make routine decisions at work while recognizing and avoiding work hazards. Id.

Dr. Al-Raqqad saw Plaintiff on April 28, 2005. Plaintiff reported symptoms of neck pain and continued swelling in her right hand. (Tr. 202). Dr. Al-Raqqad's assessment was for neck pain, sarcoid and depression. Id. On May 3, 2005, Dr. A1-Raqqad issued an assessment of Plaintiff's pain. He opined that Plaintiff suffered from significant and severe pain due to sarcoid and sarcoid

artheropathy. (Tr. 203). He went on to state that Plaintiff's pain was of such a severity as to preclude employment. Id.

On May 6, 2005, Plaintiff saw Dr. Sherman for a comprehensive physical examination. (Tr. 218). Plaintiff was negative for chest pain, coughing or shortness of breath. Id. She was also without bone or muscle pain and negative for joint swelling. Id. Plaintiff had a normal gait with no evidence of clubbing. (Tr. 219). Her neck, spine and extremities showed no tenderness or effusions. Id. Plaintiff had full range of motion. Id. All of her joints were stable, and her muscle strength was intact. Id.

Dr. Ali provided an evaluation of Plaintiff's physical capacity on May 16, 2005. (Tr. 223). He estimated that she could sit for four hours and stand or walk for one hour. Id. Dr. Ali also found that Plaintiff could lift and carry only up to five pounds. Id. He totally precluded use of both upper extremities for grasping, reaching, pushing and pulling or fine manipulation. Id. Plaintiff was also totally restricted from bending, squatting or kneeling. Id. Dr. Ali felt that Plaintiff should avoid exposure to unprotected heights, noise and vibration, moving machinery or pulmonary irritants. Id. Dr. Ali indicated that Plaintiff's pain was severe and precluded sustained concentration required for full-time employment (Tr. 224) and concluded that Plaintiff could not sustain full-time employment. (Tr. 226).

Plaintiff saw Dr. Ali again on May 23, 2005. (Tr. 227). At that time, Plaintiff reported symptoms of hand swelling and pain. Id. She could not make a fist. Id. Dr. Ali noted a scaly rash over Plaintiff's hands. Id. His impression was sarcoid-associated arthritis. Id. At the next visit to Dr. Ali, on September 19, 2005, Plaintiff reported improvement with her medication. (Tr. 228). Dr.

Ali noted that Plaintiff had multiple tender points. Id. Her joints were without swelling. Id. His impression was sarcoid-related arthritis with probable secondary fibromyalgia. Id.

Shortly thereafter, on September 29, 2005, Plaintiff returned to Dr. Al-Raqqad complaining of neck pain extending into her right shoulder. (Tr. 232). Dr. Al-Raqqad found that Plaintiff had limited range of motion in her right shoulder. Id. His impression was cervical sprain. Id. On October 19, 2005, Plaintiff was involved in a motor vehicle accident. (Tr. 233). An x-ray of her coccyx revealed no fracture. (Tr. 234). Similarly, x-rays of the cervical spine showed no fracture, dislocation or soft tissue swelling. (Tr. 235).

On January 9, 2006, Plaintiff saw Dr. Al-Raqqad for symptoms of shortness of breath. (Tr. 237). Dr. Al-Raqqad again diagnosed sarcoidosis. Id. When he next examined her, on March 6, 2006, Plaintiff had symptoms of pain in her neck and upper back. (Tr. 238). His impression was fibromyalgia. Id. By May 31, 2006, Plaintiff also presented with complaints of leg weakness. (Tr. 242). Her lower extremities were negative for edema. Id. Her deep tendon reflexes were symmetrical. Id. Dr. Al-Raqqad's impression was low back pain and weakness. Id.

On January 29, 2007, Dr. Ali provided a second assessment of Plaintiff's functional capacity. (Tr. 266). He rated her as able to sit for four hours, stand for three hours and walk for two hours. Id. He felt that she had no capacity to lift or carry any weight. Id. Dr. Ali also precluded Plaintiff from use of her arms or hands for grasping, reaching, pushing and pulling or fine manipulation. Id. Plaintiff was unable to bend, squat or kneel. Id. Dr. Ali also opined that she was to avoid all exposure to unprotected heights, noise and vibration, moving machinery and pulmonary irritants. Id. On February 5, 2007, Dr. Al-Raqqad also issued an evaluation of Plaintiff's work abilities. (Tr. 288). He found that she could sit for four hours and stand/walk for one. Id. He rated her as able

to lift up to five pounds occasionally. Id. Dr. Al-Raqqad precluded Plaintiff from using her hands for grasping, pushing and pulling or fine manipulation. Id. Dr. Al-Raqqad also felt that Plaintiff was to avoid unprotected heights and moving machinery. Id. She could be exposed to occasional noise, vibration or pulmonary irritants. Id.

Plaintiff worked primarily as a hairdresser. Plaintiff stopped working in May 2002 due to pregnancy complications. (Tr. 57). She alleges that her symptoms progressed after the birth of her third child, and she was unable to return to working. (Tr. 57, 299). Plaintiff alleges disability as of June 15, 2003. (Tr. 43). Plaintiff did not attempt any return to work after her daughter's birth and has had no involvement with the Office of Rehabilitation Services. (Tr. 299-300).

The ALJ found that Plaintiff's sarcardosis, fibromyalgia, degenerative disc disease and depression, were "severe impairments" as defined in 20 C.F.R. § 404.1520(c). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work. In particular, the ALJ assessed exertional limitations regarding the use of Plaintiff's hands; environmental restrictions as to the level of pulmonary irritants in the air; and moderate nonexertional limitations regarding the ability to maintain attention and concentration, and interact with others in the workplace. Based on this RFC, the ALJ concluded that Plaintiff could not return to hairdressing but, based on the VE's testimony, she is capable of making a successful adjustment to other light work existing in significant numbers in the national economy.

**A. The ALJ Properly Evaluated the Medical Evidence in Assessing Plaintiff's RFC**

Plaintiff's primary contention is that the ALJ erred by not giving controlling, or at least greater, weight to the total disability opinions of her treating physicians, Dr. Ali and Dr. Al-Raqqad.

Dr. Al-Raqqad became Plaintiff's primary care physician in early 2004, and she was referred to Dr. Ali, a Rheumatologist, in late 2004.

In May 2005 (while Plaintiff's request for reconsideration was pending – Tr. 34-37), Dr. Ali and Dr. Al-Raqqad completed pain and medical questionnaires which rated Plaintiff's pain and symptoms as severe and precluding all work. (Tr. 203-205; 224-226). In late January / early February 2007 (just prior to the ALJ hearing – Tr. 293), Dr. Ali and Dr. Al-Raqqad completed similar questionnaires which reached consistent conclusions. (Tr. 265, 267-268; 287, 289-290). These physicians also completed physical capacity evaluations which opined that Plaintiff was severely limited. (Tr. 223, 266, 288).

Plaintiff argues that the ALJ violated the treating physician rule by preferring the opinions of reviewing DDS physicians (Drs. Georgy and Callaghan) over her treating physicians (Drs. Ali and Al-Raqqad). In his decision, the ALJ provides a detailed explanation of the respective weights accorded to the various medical opinions offered regarding Plaintiff. (Tr. 18-20). Although Plaintiff disagrees with the ALJ's ultimate conclusions, she has not shown any error in the ALJ's evaluation of medical evidence. See Rivera-Torres v. Sec'y of Health and Human Servs., 837 F.2d 4, 5 (1st Cir. 1988) (the resolution of evidentiary conflicts is within the province of the ALJ).

A treating physician is generally able to provide a detailed longitudinal picture of a patient's medical impairments, and an opinion from such a source is entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence in the record. See 20 C.F..R. § 404.1527(d). The amount of weight to which such an opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations. See 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the opinion

must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2).

The ALJ provided adequate reasons for her refusal to fully credit the opinions of Dr. Ali and Dr. Al-Raqqad and, since such reasons are supported by the record, they are entitled to deference. In a nutshell, the ALJ concluded that the opinions of Dr. Ali and Dr. Al-Raqqad were not entitled to "significant probative weight" and were not "persuasive" because they were not supported by, or consistent with, the record as a whole. (Tr. 18-20). The ALJ noted that Dr. Ali's 2007 physical capacity evaluation (Tr. 266) contained "no detailed rationalizations for these alleged restrictions, and his treatment records do not include detailed physical examination results or other objective clinical evidence to support the physical restrictions alleged." (Tr. 19). Similarly the ALJ noted that Dr. Al-Raqqad's 2007 physical capacity evaluation (Tr. 288) is "not supported by detailed physical examination results or other objective clinical evidence." (Tr. 20). Plaintiff has shown no error in these conclusions.

Dr. Ali's first evaluation limited Plaintiff to sitting for four hours and standing or walking for one hour. (Tr. 223). He also found that Plaintiff could occasionally lift and carry only up to five pounds. Id. Dr. Ali completely restricted Plaintiff from grasping, reaching, pushing and pulling, or fine manipulation with either upper extremity. Id. For his second evaluation, Dr. Ali revised his opinion to reflect that Plaintiff could sit for four hours, stand for three hours, and walk for two hours, i.e., she was less restricted. (Tr. 266). He felt, however, that she now had no capacity to lift or carry any weight. Id. Dr. Ali again completely precluded Plaintiff from use of her arms or hands for grasping, reaching, pushing and pulling or fine manipulation. Id.

However, Dr. Ali's contemporaneous treatment notes do not reflect that he found similar restrictions while treating Plaintiff. The record does not show that Plaintiff presented any major complaints regarding her ability to sit or stand. There is no record that Dr. Ali made any findings that indicated that Plaintiff had such limitations in the time period leading up to the first evaluation. (Tr. 222). Similarly, while Dr. Ali found that Plaintiff had no real capacity to use her upper extremities, his treatment notes fail to detail a corresponding degree of limitation. Dr. Ali's treatment notes only show that Plaintiff could not make a fist with her right hand. (Tr. 227). The notes do not show that she was otherwise limited in the use of her upper extremities. Id. Of note is that Dr. Ali revised his assessment for the second evaluation. He felt that Plaintiff had a greater capacity to stand and walk, but could not lift as much. Compare Tr. 223 with Tr. 266. Dr. Ali, however, provided no support for the altered findings. Thus, it was within the ALJ's discretion to discount the weight given to this opinion.

Dr. Al-Raqqad's first assessments, dated May 3, 2005, did not contain any judgment as to Plaintiff's functional capacity or the range of work that Plaintiff could (or could not) perform. (Tr. 203-205). As such, it was within the ALJ's discretion to discount these conclusory opinions. Furthermore, as the ALJ accurately noted, Dr. Al-Raqqad's conclusions conflicted with the objective findings of Dr. Sherman. (Tr. 18). While Dr. Al-Raqqad described Plaintiff as having muscle pain, joint swelling, and shortness of breath (Tr. 204), Dr. Sherman noted that Plaintiff had no joint swelling (Tr. 218), full range of motion and intact muscle strength (Tr. 219). While Dr. Sherman's treatment relationship with Plaintiff was primarily for pulmonary issues, he conducted a full annual physical examination of her in May 2005. (Tr. 218-220). Again, it was within the ALJ's discretion to weigh this discrepancy and discount Dr. A1-Raqqad's statements as inconsistent.

The ALJ also did not err by giving reduced weight to Dr. Al-Raqqad's second evaluation. Dr. Al-Raqqad found that Plaintiff could sit for four hours and stand/walk for one. (Tr. 288). He considered Plaintiff able to lift up to five pounds occasionally, but precluded her from using her hands for grasping, pushing and pulling or fine manipulation. Id. The ALJ properly found that Dr. Al-Raqqad's conclusions were unsupported by detailed physical examination. The treatment notes from Dr. Al-Raqqad show that Plaintiff presented various complaints of pain that Dr. Al-Raqqad attributed to fibromyalgia. See, e.g., Tr. 243. There is no indication in the record that Dr. Al-Raqqad performed any specific testing of Plaintiff's functional capacities. (Tr. 232-257). In the second medical questionnaire, Dr. Al-Raqqad identified sarcoidosis and fibromyalgia as Plaintiff's impairments with symptoms of significant pain and small joint swelling. (Tr. 289). In contrast, the treatment notes leading up to the time the assessment was issued show that Plaintiff reported that her pain had decreased. See, e.g., Tr. 255. Moreover, he did not find any joint swelling at that time. Id. Plaintiff has shown no error in the ALJ's evaluation of Dr. Al-Raqqad's opinions.

Furthermore, the ALJ did not totally reject Dr. Al-Raqqad's opinion. He gave it some weight as evidenced by his RFC finding. Plaintiff was significantly limited in her ability to use her hands for fine or gross manipulation. (Tr. 17). These findings are consistent with the opinion of Dr. Al-Raqqad. Unlike the dearth of evidence supporting Plaintiff's lifting restriction, Dr. Al-Raqqad's treatment notes include reference to symptoms of hand pain and swelling. As those findings have support in the medical record, the ALJ properly incorporated those limitations from Dr. Al-Raqqad. Plaintiff is essentially asking this Court to re-weigh the medical evidence in her favor. Such a request exceeds the bounds of judicial review. Evangelista, 826 F.2d at 144.

"[An ALJ] may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (citing Shaw v. Sec'y of Health and Human Servs., 25 F.3d 1037 (1st Cir. 1994)). That is exactly what the ALJ did in this case, and there is no error. Based on the totality of the record, the ALJ reasonably restricted Plaintiff's RFC to a limited range of light work. (Tr. 17). Plaintiff has shown no error in the ALJ's physical RFC assessment and no violation of the treating physician rule.

**B. The ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain and Depression**

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (Tr. 18). He noted that the medical evidence did not support the degree of limitation alleged by Plaintiff. Id. The ALJ did not totally reject Plaintiff's claims and, as noted above, found that Plaintiff retained the RFC to perform only a limited range of light work. The ALJ incorporated limitations for Plaintiff's reported hand pain, pulmonary issues and depression.

Plaintiff contends that the ALJ's credibility determination was erroneous because it is "merely conclusory" and "inaccurate." Although it is true that the ALJ's statement that the medical evidence does not support the degree of limitation alleged is conclusory, Plaintiff fails to mention that this "conclusory" statement is immediately followed by a detailed discussion of the medical evidence. (Tr. 18-20). As to Plaintiff's claim of inaccuracy, she asserts that the "medical evidence does support [her] allegations." Document No. 6 at 18. Plaintiff, however, does not cite to any portion of the record to support this general assertion. Plaintiff has shown no error in the ALJ's

evaluation of her credibility and, if any was shown, it would be harmless error when considered in the context of the entire record in this case.

## VI. CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 7) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 6) be DENIED. Final judgment shall enter in favor of the Commissioner.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 11, 2008